UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
WILLIAM SALAMANCA, individually and on
behalf of all others similarly situated,

                                 Plaintiff,

               -against-

"ABC CORPORATION" d/b/a GREEN VALLE
TREE SERVICE, name of the corporation being
fictitious and unknown to Plaintiff, and
WALTER VALLE and SANDRO FLORES, as
individuals,

                              Defendants.

---------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
19-cv-1335 (WFK)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

     Presently before the Court in this wage and hour collective action, on referral

from the Honorable Roslynn R. Mauskopf for Report and Recommendation, is

Plaintiff's William Salamanca ("Plaintiff" or "Salamanca") Motion for Default

Judgment. *See* Docket Entry ("DE") DE [19].  By way of Complaint filed on March 7,

2019, Plaintiff commenced this action, on behalf of himself and others similarly

situated, against "ABC Corporation," d/b/a Green Valle Tree Service, name of the

corporation being fictitious and unknown to Plaintiff ("Green Valle"), Walter Valle

("Valle") and Sandro Flores ("Flores," together with Valle, the "Individual

Defendants," and collectively with Green Valle and Valle, "Defendants"), alleging

violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*

and the New York Labor Law ("NYLL"), seeking, *inter alia*, unpaid overtime

compensation from Defendants.  *See* Complaint ("Compl."), DE [1].[1]  After Defendants failed to appear or otherwise defend this action, the Clerk of the Court entered default against them on July 9, 2019.  *See* DE [8].  On August 21, 2019, Plaintiff filed his first motion for default judgment, which this Court recommended be denied in its October 30, 2019 Report and Recommendation (the "2019 R&R").  *See* DE [9], [14].  Judge Mauskopf adopted the 2019 R&R, giving Salamanca leave to renew upon curing the deficiencies in his motion, addressed below.  *See* DE [18].  On December 11, 2020, Plaintiff filed the instant motion, as to the Individual Defendants only, which Judge Mauskopf referred to this Court for a recommendation as to whether it should be granted, and if so, to determine the appropriate remedies.  *See* January 11, 2021 Electronic Order Referring Motion.  For the reasons set forth herein, it is respectfully recommended that Plaintiff's motion be granted in part and denied in part, and he be awarded monetary relief as described below.

## I. BACKGROUND

### A. <u>Relevant Facts</u>

The facts below are taken from the Complaint and assumed true for purposes of resolving this motion.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

This action arises out of Defendants' alleged failure to pay overtime and spread-of-hours wages to Plaintiff, or to provide him with required wage notices and statements.  *See generally* Compl.  According to the Complaint, Green Valle is a New

---

[1] Although the caption indicates the intent to proceed as a class or collective action, no motion for certification was ever filed.

York Corporation involved in the landscaping business and located in Hempstead, New York. *See id.* ¶¶ 9-10, 27. The Individual Defendants are both Chief Executive Officers of Green Valle, and own and operate the company. *See id.* ¶¶ 11-12, 18-19. Salamanca worked for Defendants from approximately June 2016 through November 2016, and again from April 2017 through December 2018. *See id.* ¶ 26. Plaintiff's responsibilities as a Green Valle employee included landscaping, tree cutting and trimming, and "performing other miscellaneous duties." *See id.* ¶ 27. While employed, Salamanca worked roughly 72 hours per week, and was paid approximately $180.00 per day worked in 2016 through 2017 and about $200.00 per day worked in 2018. *See id.* ¶¶ 28-29. Defendants never paid Plaintiff time-and-a-half for hours worked in excess of 40 in a given week, nor was he compensated for an extra hour on days he worked more than ten hours. *See id.* ¶¶ 30-31. Additionally, Defendants failed to provide Salamanca with the annual wage notices or regular wage statements required by the NYLL. *See id.* ¶¶ 62, 65.

## B. <u>Procedural History</u>

Based on the above, Plaintiff commenced this action against Defendants on March 7, 2019, seeking redress for unpaid overtime and spread-of-hours wages under the FLSA and NYLL, as well as statutory damages for Defendants' failure to provide wage notices pursuant to the NYLL. *See generally* Compl.

Salamanca served the Summons and Complaint on Green Valle and Valle on March 14, 2019, and on Flores on March 18, 2019. *See* DE [4]-[6]. On July 2, 2019, after the time for Defendants to appear or otherwise defend this action passed,

Plaintiff requested a Certificate of Default, *see* DE [7], and the Clerk of the Court entered default against Defendants on July 9, 2019. *See* DE [8].

On August 21, 2019, Salamanca filed his first motion for default judgment, seeking an award of $304,912.00, inclusive of $147,456.00 in unpaid overtime wages, liquidated damages in the amount of $147,456.00 and statutory penalties in the amount of $10,000. *See* DE [9]-[12]. Judge Mauskopf referred that motion to this Court for a report and recommendation. *See* August 22, 2019 Electronic Order Referring Motion.

This Court's 2019 R&R, entered on October 30, 2019, recommended that Plaintiff's motion be denied, without prejudice, and with leave to renew upon curing its deficiencies in connection with Salamanca's failure to adequately establish liability or damages. *See* 2019 R&R at 6-12. As to liability, the Court recommended that default judgment be denied for three reasons: (1) Plaintiff sued Green Valle as a fictitious corporation, and courts in this district decline to enter judgments against fictitious entities; (2) the FLSA claims against all Defendants failed to sufficiently allege the threshold requirements that an employer-employee relationship exists between the parties, or that Defendants operate an enterprise engaged in interstate commerce; and (3) the NYLL causes of action failed to establish an employer-employee relationship between the parties. *See id.* at 7-11. As to damages, the Court concluded that even if Salamanca established Defendants' liability, his request for over $300,000.00 in damages would be inappropriate based on the lack of evidentiary support for such a figure. *See id.* at 11-12.

4

Judge Mauskopf adopted the 2019 R&R on May 18, 2020, denying Plaintiff's motion for default judgment without prejudice, and with leave to renew upon curing the deficiencies detailed in the recommendation. *See* DE [18].

On December 11, 2020, Plaintiff filed the instant motion for default judgment against the Individual Defendants, which seeks an award of $304,912.00, inclusive of $147,456.00 in unpaid overtime wages, liquidated damages in the amount of $147,456.00 and statutory penalties in the amount of $10,000.00 for violations of notice and wage statement requirements under the NYLL. *See* Memorandum of Law in Support of Plaintiff's Motion for Entry of Default Judgment as Against Defendants Walter Valle and Sandro Flores, as Individuals ("Pl. Mem."), DE [21], at 9. The motion was referred to this Court for report and recommendation on January 11, 2021. *See* January 11, 2021 Electronic Order Referring Motion. For the reasons set forth below, the Court respectfully recommends that the motion be granted in part and denied in part.

## II.  DEFAULT JUDGMENT STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to

liability are deemed true. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).   In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18CIV5624ARRVMS, 2020 WL 6370148, at *10–11 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (internal quotations and citations omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted).  Accordingly, prior to entering a default

judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

## III. DISCUSSION

Applying the above standards, and for the reasons stated below, the Court concludes that Salamanca has not adequately established liability under the FLSA, but has established liability under the NYLL, as well as for damages under that statute, and respectfully recommends granting in part and denying in part Plaintiff's motion for a default judgment on these grounds.

### A. <u>Liability</u>

#### 1. **Fair Labor Standards Act**

While Salamanca's renewed motion for default judgment is made only with respect to the Individual Defendants' liability under the FLSA, and no longer asserts liability against a fictitious entity, the instant motion does not otherwise cure the deficiencies attending his prior motion for default judgment.

Plaintiff must establish that Defendants are employers engaged in interstate commerce to be afforded protection under the FLSA. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013).

### a. Employer-Employee Relationship

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). To determine whether someone is an "employer" under the statute, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013) (internal quotation and citation omitted). The analysis depends on whether a defendant had "operational control" over employees. *Id.* at 110.

Salamanca's Complaint fails to establish that Defendants satisfy the economic realities test, as this Court concluded in the 2019 R&R. *See* 2019 R&R at 8-9. The Complaint merely and conclusively states, upon information and belief, that the Individual Defendants each have "power over payroll decisions" and "personnel decisions" at Green Valle, and had the power to hire and fire employees, establish and pay their wages, set their work schedules and maintain their employment records. *See* Compl. ¶¶ 14-16, 21-23.

Plaintiff's renewed motion for default judgment cures the deficiencies as to his previous failure to meet the pleading requirements necessary to establish an employer-employee relationship. Salamanca, for the first time, filed his own affidavit in support of the instant motion, which the court may properly consider. *See* Affidavit

of William Salamanca ("Salamanca Aff."), DE [20-6]; *Bricklayers*, 779 F.3d at 189 (a motion for default judgment may be granted based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiff[]" with his motion); *see also, e.g., Cabrera v. 1560 Chirp Corp.*, No. 15-cv-8194, 2017 WL 1289349, at *11 (S.D.N.Y. March 6, 2017) (applying *Bricklayers* and its progeny and relying on an affidavit outside the complaint to find that Plaintiff met elements of a FLSA claim on a motion for default judgment), *report and recommendation adopted*, 2017 WL 1314123 (S.D.N.Y. Apr. 6, 2017).[2]

In his affidavit, Plaintiff avers that the Individual Defendants assigned him daily jobs, tasks and assignments, set his work schedule, job locations and payment terms, supervised his work and required Salamanca to report to them when he finished a job.  *See* Salamanca Aff. ¶¶ 5-7.  These assertions are sufficient to establish an employer-employee relationship.

### b. Interstate Commerce

Nevertheless, while Plaintiff's affidavit cures the Complaint's deficiencies as to the existence of an employer-employee relationship, Salamanca's motion papers fail to assert sufficient facts regarding Defendants' status as an enterprise engaged in interstate commerce.  An employer is considered an "[e]nterprise engaged in commerce or in the production of goods for commerce" and therefore liable for wage

---

[2] This approach is consistent with Fed. R. Civ. P. 55(b)(2), which establishes that "[t]o the extent that the plaintiff's allegations are inadequate, 'a district court has discretion . . . to require proof of necessary facts' to satisfy itself that there is 'a valid cause of action..'" *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-cv-3841, 2018 WL 4327923, at *2 (E.D.N.Y. July 9, 2018) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also* Fed. R. Civ. P. 55(b)(2) (providing that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegation by evidence").

violations under the FLSA if it: (1) has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000, exclusive of excise taxes at the retail level that are separately stated. *See* 29 U.S.C. § 203(s)(1); *see id.* § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof"); *see id.* § 203(i) (defining "goods" as not including "goods after their delivery into the actual physical possession of the ultimate consumer thereof"); *see id.* § 203(j) (defining "produced" as "produced, manufactured, mined, handled, or in any other manner worked on in any State"); *Guanglei*, 2020 WL 6370148, at *10 (noting that "goods" and "materials" are distinct categories and defining "materials" to include "tools or other articles necessary for doing or making something.").

FLSA coverage exists where the employee is "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Guanglei*, 2020 WL 6370148, at *10 (citation omitted). Enterprise coverage may also exist where employees handle supplies or equipment that originated out-of-state. *See id.* ("The interstate movement referred to is, rather,

that movement by which such goods have been made available for sales of the reselling establishment, as where a retail enterprise located in one State purchases or receives goods for resale to its customers and these goods move or have moved in commerce from other States.") (quoting *Donovan v. Scoles*, 652 F.2d 16, 19 (9th Cir. 1981); *Shim v. Millennium Grp.*, No. 08 Civ. 4022 (FB) (WP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) ("[T]he test is met if employees at [defendant] merely handled supplies or equipment that originated out-of-state.").

Plaintiff's Complaint states only that Green Valle:

[I]s, at present and has been at all times relevant to the allegation in the complaint, an enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity (i) has had employees engaged in commerce or in the production of goods for commerce, and handle[s], sell[s] or otherwise work[s] on goods or material that have been moved in or produced for commerce by any person[;] and (ii) has had an annual gross volume of sales of not less than $500,000.00.

Compl. ¶ 25.

Salamanca's affidavit merely adds that the Individual Defendants "owned all the machinery . . . used to do jobs," with no other description of the equipment or the connection, if any, to interstate commerce.  Salamanca Aff. ¶ 9.  Permitting such vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless.  *See, e.g., Jones v. E. Brooklyn Servs. Corp.*, No. 11 Civ. 1021, 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (recommending denial of default judgment motion where the complaint contained "only conclusory statements about interstate commerce"), *report and recommendation adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012); *Gunawan*

*v. Sake Sushi Rest.*, 897 F. Supp, 2d 76, 85-86 (E.D.N.Y. Sept. 24, 2012) ("[I]nferring an interstate commerce nexus from nothing more than the general description of an employer's business – however likely the conclusion may seem – is in tension with both the presumption against default and the purpose of [Fed. R. Civ. P.] 55.").[3]

For the foregoing reasons, the Court concludes that Plaintiff has not cured the deficiencies found in his Complaint to establish that he is covered by the FLSA, and recommends denying Plaintiff's motion for default judgment against the Individual Defendants under this statute.

### 2. New York Labor Law

The Court concludes, however, that Plaintiff has adequately cured the deficiencies in his Complaint as to his NYLL causes of action.

"The New York Labor Law 'is the state analogue to the federal FLSA,'" with the exception that there is no interstate commerce or minimum sales volume requirement. *See D'Arpa*, 2013 WL 3010810, at *18 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ("Although the [NYLL] 'does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales,' it otherwise echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements.")). As such, "the standards by which a court determines whether an entity is an employer under the

---

[3] The Court recognizes contrary authority within the Second Circuit, *see, e.g., Vega v. K & C Interior Constr. Corp.*, No. 18-CV-00182, 2018 WL 4376486, at *2 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, No. 18-CV-182 (ARR), 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) ("Allegations detailing statutory definitions without providing additional facts are generally not sufficient to infer a nexus to interstate commerce. In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences."), but declines to follow it for the reasons stated above.

FLSA also govern that determination under the New York labor law." *Wolman v. Catholic Health Sys. Of Long Island, Inc.*, No. 10-cv-1326, 2013 WL 1335748, at *2 (E.D.N.Y. Mar. 29, 2013) (internal quotations and citations omitted).  Indeed, "[t]o determine whether an individual is an 'employer' under both statutes, courts in this circuit consider the 'economic reality' of the employer-employee relationship." *Serrano v. I. Hardware Distributors, Inc.*, No. 14-cv-2488, 2016 WL 1441469, at *2 (S.D.N.Y. Apr. 7, 2016) (internal citation omitted).

For the reasons discussed above with respect to an employer-employee relationship under the FLSA, the allegations in the default judgment submissions, specifically Plaintiff's affidavit, are sufficient to establish the necessary employment relationship and impose liability on Defendants under the NYLL.  *See Santillan*, 822 F. Supp. at 293 (noting that the NYLL provisions are "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law) (internal quotations and citations omitted).  Accordingly, and because there is no interstate commerce or minimum sales volume requirement under the NYLL, the Court recommends that Salamanca's motion for default judgment as to the Individual Defendants' liability under the NYLL be granted.

### B. <u>Damages</u>

Once liability is established, the court must ascertain damages with "reasonable certainty."  *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014).  To prove damages, the plaintiff need only show that the "compensation

sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).   An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded.   *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Here, Plaintiff seeks damages in the amount of $304,912.00, plus interest and attorney's fees, inclusive of $147,456.00 in unpaid overtime wages, liquidated damages in the amount of $147,456.00, and statutory penalties in the amount of $10,000.00 for violations of notice and wage statement requirements under the NYLL.   *See* Pl. Mem. at 9; Proposed Default Judgment Order, DE [20-8].

Under the NYLL, "an employer is required to maintain records of the wages, hours, and persons employed by him." *Lu Nan Fan v. Jenny & Richard's Inc.*, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotations and citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).   Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn declaration "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages in this context." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotations and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also*

*Herrera v. Tri-State Kitchen and Bath, Inc.*, 2015 WL 1529653, at *8 (E.D.N.Y. Mar. 31, 2015). "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Plaintiff submitted an affidavit describing his approximate dates of employment, along with his average hours and wages per week. Salamanca Aff. ¶¶ 10-16. Salamanca's attorney's affirmation attaches as an exhibit a table of damage calculations. *See* Avshalumov Aff. ¶ 24; Labor Law Calculations, DE [20-7]. Considering Defendants' default, Plaintiff's evidence on damages stands uncontroverted, and therefore he has provided a sufficient basis to determine damages as to his NYLL claims.

### 1. Unpaid Overtime Compensation

Overtime compensation under the NYLL is 1.5 times the regular rate of pay for each hour worked in excess of 40 hours per week. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying an employee's regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero v. 79th Street Gourmet & Deli, Inc.*, No. 18CV04761ARRST, 2019 WL 4889591, at *8 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, No. 18CV04761ARRST, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (internal quotations and citation omitted).

Here, Plaintiff sufficiently alleges that Defendants did not pay him overtime compensation on his regular wage of $27.00 per hour for 32 hours of overtime worked each week between June 2016 and November 2016, and again from April 2017 through December 2017.  *See* Labor Law Calculations.  Plaintiff alleges that he worked approximately 72 hours total per week in both periods, and therefore 32 hours of overtime above 40 hours each week.  *See id.*  For those two periods, because Plaintiff should have been paid $40.50 per overtime hour ($27.00 × 1.5) for each hour worked in excess of 40 hours, and because he worked 32 hours of overtime for 56 weeks (totaling 1,792 hours), Plaintiff is entitled to $72,576.00 ($40.50 × 1,792 hours) in overtime compensation.  Next, from January 2018 through December 2018, Plaintiff's regular wage increased to $30.00 per hour, and he should have been paid $45.00 ($30.00 × 1.5) for each hour worked in excess of 40 hours.  *See id.*  Therefore, after working 32 hours of overtime for 52 weeks (totaling 1,664 hours), he is entitled to $74,880.00 ($45.00 × 1,664 hours) in overtime compensation for this period. Combining these two amounts, the Court respectfully recommends that Plaintiff be awarded a total of $147,456.00 in unpaid overtime wages.

## 2. Liquidated Damages

The NYLL allows for liquidated damages awards equaling 100 percent of the wages due.  *See* N.Y. Lab. Law § 663(1).  A court may decline to award liquidated damages, however, if "the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1); *see also Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 293 (S.D.N.Y.

2016) ("[A] November 24, 2009 amendment changed the NYLL liquidated damages provision to resemble that of the FLSA, which requires only an absence of good faith on the part of the employer, shifting the burden to the employer to prove that he acted in good faith.").

Here, Defendants, having defaulted, have failed to make a showing of good faith, rendering liquidated damages appropriate. *See, e.g., Lu Nan Fan*, 2019 WL 1549033, at *11. Therefore, Plaintiff is entitled to 100 percent of his damages for overtime wages ($147,456.00) under the NYLL. Accordingly, the Court respectfully recommends that Plaintiff be awarded $147,456.00 in liquidated damages.

### 3. Statutory Damages Under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted). After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d).

Here, Plaintiff alleges that he never received a wage notice or wage statements from Defendants at any point during his employment.  Compl. ¶¶ 61-66.  Because Plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, the Court respectfully recommends that Plaintiff be awarded the maximum statutory damages of $5,000 under NYLL section 195(1) and $5,000 under section 195(3), for a total of $10,000.  *See, e.g., Sarmiento Perez v. Comhar Grp. LLC*, No. 19-CV-0964 (FB) (JO), 2020 WL 1364908, at *6 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, No. 19-CV-964 (FB) (JO), 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Jianmin Jin v. Shanghai Original, Inc.*, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

### 4. Prejudgment Interest

The NYLL provides for prejudgment interest at an interest rate of nine percent per annum in addition to liquidated damages.  *See* N.Y. Lab. Law § 198(1-a); *Espinoza v. Indus. Glass & Mirror Inc.*, 2016 WL 7650592, at *6 (E.D.N.Y. Nov. 30, 2016), *report and recommendation adopted*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("[T]he NYLL permits the award of both liquidated damages and pre-judgment interest."). Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as "the earliest ascertainable date the cause of action existed," or a reasonable intermediate date if damages were incurred at various times.  *Santillan*, 822 F. Supp. 2d at 298 (quoting N.Y. C.P.L.R. § 5001(b)).

Accordingly, the Court recommends calculating prejudgment interest from the midpoint of each of the three periods and adding the totals to arrive at the full prejudgment interest amount.

Plaintiff first worked for Defendants from June through November 2016. *See* Labor Law Calculations. The midpoint date for this period is approximately August 31, 2016. Next, Defendants employed Salamanca from April through December 2017. The midpoint date for this second period is approximately August 16, 2017. Finally, Plaintiff returned to work for Defendants from January through December 2018. *See id.* The midpoint date for Salamanca's last period of work for Defendants is approximately July 1, 2018. The total compensatory damages for unpaid overtime wages due under the NYLL for the three periods is $147,456.00, as discussed above.

The Court calculates pre-judgment interest on this amount at a rate of nine percent per year to be $29,851.56.[4] As the unpaid overtime wages remain outstanding, daily interest shall continue to accrue at the rate of $36.36 per day for each day until judgment is entered.

Accordingly, the Court recommends that pre-judgment interest amounting to $29,851.56 be awarded to Plaintiff, with interest accruing at a daily rate of $36.36 until judgment is entered.

---

[4] The Court reaches this figure by taking the number of days between the start and mid-point dates for each of the three time periods, and multiplying the number of days by the daily interest rate of $36.36 ($147,456.00 [principal loan amount] x 0.09 [yearly interest] = $13,271.04 [yearly interest] / 365 days = $36.36 per day interest). Accordingly, the total prejudgment interest for the first time period amounts to $6,617.52 (182 days x $36.36); the total for the second time period equals $9,962.64 (274 days x $36.36); and the total prejudgment interest for the third time period is $13,271.40 (365 days x $36.36). The sum of these three figures equals $29,851.56.

### 5.  Post-judgment Interest

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment."  An award of post-judgment interest at the statutorily prescribed rate is mandatory.  *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008).  The one-year constant maturity Treasury yield for the week beginning July 6, 2021 is .07.  *See* https://www.federalreserve.gov/releases/h15/.  Accordingly, the Court respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment, until the date the judgment is paid.

### 6.  Attorney's Fees

Plaintiff is entitled to recover reasonable attorney's fees and costs under the NYLL.  *See* N.Y. Lab. Law § 663(1).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged."  *Martinez v. New 168 Supermarket LLC*, No. 19CV4526CBASMG, 2020 WL 5260579, at *7 (E.D.N.Y. Aug. 19, 2020), *report and recommendation adopted*, No. 19CV4526CBASMG, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (internal quotations and citations omitted).  Courts in the Second Circuit require that a fee application be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *See id.*  "Failure to do so results in denial of the motion for fees."  *Riordan*

*v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); s*ee also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010).   District courts have broad discretion in determining the reasonableness of an attorney's requested fees.   *See Chocolatl v. Rendezvous Cafe, Inc.*, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Here, Plaintiff provides no records as to attorney time worked in any of his motion papers or supporting affidavits.   Accordingly, the Court respectfully recommends that Plaintiff's request for attorney's fees be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment against the Individual Defendants be granted in part and denied in part, and that Plaintiff be awarded $334,763.56 in damages, inclusive of unpaid overtime wages, liquidated damages, statutory penalties and pre-judgment interest.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.   Plaintiff is directed to serve a copy of it on Defendants via first-class mail and file proof of service by ECF within three days of the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days.   *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).   Failure to file objections within this period

waives the right to appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            July 15, 2021

                              /s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge